The Honorable Kim Hendren State Senator 1501 Highway 72 Southeast Gravette, Arkansas 72736-9438
Dear Senator Hendren:
I am writing in response to your recent request for my opinion on the following six (6) questions, some of which have been paraphrased slightly:
 1. Is it a correct statement of the law to say that when a county equalization board lowers or makes changes in property values, the board is obligated to review all similarly situated properties and change those values as well?
 2. If the equalization board chooses to extend the deadline to submit a petition for an assessment adjustment hearing, what does this extension mean and does it give citizens additional days to submit applications?
 3. How many days can the board extend the deadline?
 4. Who sets the parameters for the "ratio study" mandated by A.C.A. § 26-26-304 and what are the parameters?
 5. How can the public learn if appraisals in their county have achieved the percentage of market value required to pass the ratio study?
 6. Is it legal to omit certain transactions from the market value analysis? *Page 2 
RESPONSE
In response to your first question, in my opinion, your statement is more or less correct. When an equalization board raises or lowers the value of a property, it reviews the values of similarly situated properties. If the reason given by the board for changing the value of the first property applies to the other properties, then their values will be raised or lowered accordingly. A.C.A. § 26-27-315(a)(1)(D) (Supp. 2007). In response to your second and third questions, in my opinion, it is not clear from the applicable statute, A.C.A. § 26-27-317, that an equalization board is authorized to extend the deadline for submitting new applications for adjustment. A.C.A.26-27-317(a) (Supp. 2007). In response to your fourth question, the parameters for the ratio study are set by the International Association of Assessing Officers (IAAO). A.C.A. § 26-26-304(a)(3). These parameters can be viewed on the IAAO's website. In response to your fifth question, the percentage of market value achieved by each county in the ratio study is available on the Arkansas Assessment Coordination Division's (ACD's) website. In response to your sixth question, in my opinion, the applicable statute, A.C.A. § 26-26-304, merely requires that the ratio study be conducted with a statistically sound sample. See A.C.A. § 26-26-304(a)(1)(B)(i) and § 26-26-304(a)(1)(B)(iii). Depending on the number and type of transactions taking place in a given year, it may not be necessary to include all transactions in order to achieve this requirement.
Question 1: Is it a correct statement of the law to say that when acounty equalization board lowers or makes changes in property values,the board is obligated to review all similarly situated properties andchange those values as well?
Arkansas Code Annotated § 26-27-315 provides for the equalization of assessments. That section states, in relevant part:
 (a) Immediately after the county assessor files his or her report of the assessment of real and personal property in the office of the clerk of the county court as required by law, the clerk of the county court shall present the report of the assessment to the county equalization board, and the county equalization board shall proceed to equalize the assessed valuation of the properties. *Page 3 
 (b) For this purpose, the county equalization board shall observe the following rules:
 (1)(A) It shall raise or lower the valuation of any property to bring about a complete equalization.
 (B) It shall not raise or lower the valuation of any property without documenting the reason for raising or lowering the valuation of the property, and the documentation shall be attached to the appropriate property record card or cards.
 (C) The reasons for lowering or raising the valuation of property shall be limited to:
 (i) The assessment is unfair compared with other properties of the same kind similarly situated, evidenced by the fact that the property is assessed higher than neighborhood properties of the same use, size, materials, and condition;
 (ii) The assessment is clearly erroneous, evidenced by the fact that the appraisal relies on substantially inaccurate or insufficient information concerning the property; or
 (iii) The assessment is manifestly excessive or greatly exceeds what willing and knowledgeable buyers will pay similarly motivated sellers for the property, evidenced by selling prices of similarly situated properties.
 (D)(i) It shall not raise or lower the value of any property without reviewing values of similarly situated properties.
 (ii) If the same reason for raising or lowering the value of the property exists for those similarly situated properties, the values for those properties shall also be raised or lowered, and the changes shall be documented.
A.C.A. § 26-27-315(a)-(b) (Supp. 2007).
To summarize, after the assessor files his assessment report, the county equalization board must equalize the assessed values by raising or lowering the *Page 4 
value of properties, where appropriate, in order to bring about a complete equalization. A.C.A. § 26-27-315(a)-(b)(1)(A) (Supp. 2007). The board may not, however, raise or lower the value of any property without documenting the reason for doing so. A.C.A. § 26-27-315(b)(1)(B) (Supp. 2007). The statute provides a limited list of appropriate reasons for changing the valuation of a property. A.C.A. § 26-27-315(C) (Supp. 2007). When the value of a property has been changed in the manner provided, the law requires the board to review the values of similarly situated properties. A.C.A. § 26-27-315(D)(i) (Supp. 2007) (emphasis added). If the reason that the board changed the value of the originalproperty applies to the other, similarly situated, properties, thentheir values must be changed accordingly.[1] A.C.A. § 26-27-315(D)(ii) (Supp. 2007) (emphasis added).
Questions 2 3: If the equalization board chooses to extend thedeadline to submit a petition for an assessment adjustment hearing, whatdoes this extension mean and does it give citizens additional days tosubmit applications? How many days can the board extend thedeadline?
Arkansas Code Annotated § 26-27-317 deals with requests for assessment adjustment hearings and provides, in relevant part:
 (a) Any property owner or an agent of a property owner may apply in person, by petition, or by letter to the secretary of the county equalization board on or before the third Monday in August of every year for the adjustment of the county assessor's assessment on the property owner's property or the property of another person.
A.C.A. § 26-27-317(a) (Supp. 2007) (emphasis added).
After a request for an assessment adjustment has been made in the manner provided, the secretary of the county equalization board will schedule a hearing. A.C.A. § 26-27-317(b)(2) (Supp. 2007). The statute does not provide any method by which the county equalization board may extend the deadline to submit a petition or otherwise make a request for a hearing.
Typically, the county equalization board's "equalization meetings," during which the board holds hearings on assessment adjustments, are held from August 1 through *Page 5 
October 1 of each year. A.C.A. § 26-27-311(a)(2)(A) (Supp. 2007). Arkansas § 26-27-311 does permit the board to go into a special session in order to "[c]omplet[e] its work of the equalization of property assessments; or . . . [r]eview or extend its work of the equalization of property assessments. A.C.A. § 26-27-311(a)(1)(A)(i) and (ii) (Supp. 2007). This special session may last through the third Monday in November. A.C.A. § 26-27-311(a)(2). Presumably, holding hearings on assessment adjustment requests is part of the "work of equalization of property assessments." For this reason, I believe that the board may go into special session in order to continue holding hearings on petitions and other requests for assessment adjustments. However, this does not mean that the board may extend the deadline by which such petitions and requests must first be submitted. The deadline to request an assessment adjustment hearing was statutorily set by the Arkansas General Assembly, which did not provide any mechanism for an extension.
For these reasons, it is my opinion that the county equalization board may not extend the deadline to submit a petition for an assessment adjustment hearing. The board may extend the time which it ordinarily has to review such petitions and to hold assessment adjustment hearings until the third Monday in November by going into a special session; however this does not give citizens any additional days to request a hearing.
Question 4: Who sets the parameters for the "ratio study" mandated byA.C.A. § 26-26-304 and what are the parameters?
Arkansas Code Annotated § 26-26-304 mandates the use of "ratio studies," stating:
 (a)(1)(A) The Assessment Coordination Department shall prepare a ratio study for the purpose of determining the average ratio of full assessed value to the true and full market or actual value of real property, by classifications, in each of the several counties and school districts of the state in the assessment year that reappraised values are placed on the assessment rolls.
A.C.A. § 26-26-304(a)(1)(A) (Supp. 2007).
Pursuant to statute, the parameters for these ratio studies are set by the International Association of Assessing Officers' (IAAO's) standards on ratio studies. A.C.A. § 26-26-304(a)(3) (Supp. 2007.) The IAAO standards on ratio *Page 6 
studies are too lengthy to set forth in this opinion; they are available, however, on the IAAO's website at: www.iaao.org/uploads/RatioStd07.pdf.
Question 6: How can the public learn if appraisals in their countyhave achieved the percentage of market value required to pass the ratiostudy?
Pursuant to A.C.A. § 26-26-304, a county will fail the mandated ratio study if the ratios of assessed value to market value achieved do not fall between eighteen percent (18%) and twenty-two percent (22%). A.C.A. § 26-26-304(e)(1) (Supp. 2007).
The public may learn the ratio of assessed value to market value achieved by each Arkansas county during the last few ratio studies by visiting the website for the Arkansas Assessment Coordination Department at: www.arkansas.gov/acd/co_ratio_studies.html.
Question 6: Is it legal to omit certain transactions from the marketvalue analysis?
The Assessment Coordination Department is responsible for preparing the mandated ratio studies. A.C.A. § 26-26-304(a)(1)(A) (Supp. 2007). Arkansas Code Annotated § 26-26-304(a)(1)(B) describes the general methodology to be used by the department, stating:
 This ratio study shall be based on sales-to-assessment ratios, supplemented with appraisal to assessment ratios as required to meet generally accepted statistical techniques.
A.C.A. § 26-26-304(a)(B)(i) (Supp. 2007) (emphasis added).
To facilitate the preparation of the ratio studies, all counties are required to report sales data to the department. A.C.A. § 26-26-304(a)(B)(iii) (Supp. 2007). However, the sales data statutorily required to be reported includes only the data for properties transferred under a warranty or special warranty deed. A.C.A. § 26-26-304(a)(1)(B)(iii)(a) (Supp. 2007).[2] *Page 7 
In the event that the sales data submitted does not provide a "statistically sound sample," the ratio study may include sales date for the previous three (3) calendar years. A.C.A. § 26-26-304(a)(1)(B)(iv)(b) (Supp. 2007) (emphasis added).
Moreover, as previously mentioned:
 In conducting the studies, the department shall use generally accepted valuation procedures, statistical compilation, and analysis techniques found in the International Association of Assessing Officers' standards on ratio studies.
A.C.A. § 26-26-304(a)(3) (Supp. 2007) (emphasis added).
Nothing in the statutory provisions concerning ratio studies requires all transactions from any particular assessment year to be included in the "market value analysis." In fact, transactions in which the property was not transferred under a warranty deed or special warranty deed are not even statutorily required to be reported to the department and, therefore, cannot be included. Moreover, when necessary to ensure proper methodology, sales from previous years may be included as well.
It is my opinion that the statutory focus is on including a quantity and quality of data sufficient to constitute a statistically sound sample. Therefore, depending on the type and quantity of transactions occurring in a given year, it may be legal to omit certain transactions from the market value analysis.
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JC/cyh
[1] For a discussion of what the term "similarly situated" means in the context of this statute, please see Op. Att'y Gen. 2008-131.
[2] The department may require other data to be submitted as well. A.C.A. § 26-26-304(a)(1)(B)(iii)(h) (Supp. 2007). *Page 1